IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| J.B. HENRY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>    Defendant. )<br>_____ ) | Civil No. 3:13cv357 (DJN) |

## MEMORANDUM OPINION

J.B. Henry ("Plaintiff") is 52 years old and previously worked as a construction worker, fastfood worker and tow truck driver. On December 3, 2004, Plaintiff applied for Social Security Disability ("DIB") under the Social Security Act (the "Act") with an alleged onset date of May 7, 1996 through his date last insured of March 31, 1999, claiming disability due to orthopedic impairments.[1] Upon Plaintiff's initial appeal of his DIB claim to the United States District Court, the Commissioner agreed to remand the matter for consideration of Plaintiff's mental impairments. After further development of the record, an Administrative Law Judge ("ALJ") denied Plaintiff's request for DIB benefits stemming from Plaintiff's physical and mental impairments during the relevant time period. The Appeals Council denied Plaintiff's request for review regarding his mental impairments.

Plaintiff now challenges the ALJ's denial of DIB benefits based on his mental impairment during the relevant time period, asserting that the ALJ erred in determining that Plaintiff's mental condition did not meet the requirements of listing § 12.05(C). (Pl.'s Mem. in

---

[1] Plaintiff receives Supplemental Security Income ("SSI") as of December 2004 due to his physical impairments.

Supp. of Mot. for Summ. Judg. ("Pl.'s Mem.") (ECF. No. 9) at 16-29.) Specifically, Plaintiff argues that the ALJ applied the incorrect standard of law by requiring Plaintiff to demonstrate that Plaintiff had a complete lack of adaptive functioning. (Pl.'s Mem. at 18-19.) Further, Plaintiff contends that the ALJ's determination that Plaintiff had no deficits in adaptive function lacks the support of substantial evidence. (Pl.'s Mem. at 16-21.) Plaintiff concedes that, during the relevant time period, his physical impairments did not meet the requirements for disability under the Act. (Pl.'s Mem. at 8.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter is now before the Court by consent of the parties pursuant to 28 U.S.C § 636(c)(1) on the parties' cross motions for summary judgment, which are now ripe for review. Having reviewed the parties' submissions and the entire record in this case,[2] for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 8); GRANTS Defendant's Motion for Summary Judgment (ECF No. 11); and AFFIRMS the final decision of the Commissioner.

## I. BACKGROUND

Because Plaintiff challenges whether the ALJ erred in determining that Plaintiff's mental condition did not meet the requirements of listing § 12.05(C), Plaintiff's educational and work history, non-treating state agency physician's opinions, Plaintiff's function report, third party correspondence and the hearing testimony are summarized below.

---

[2] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

A. Plaintiff's Education and Work History

Plaintiff is 52 years old and completed school through the ninth grade. (R. at 106, 125, 164.) Though Plaintiff indicated that he did not attend special education classes, Plaintiff participated in Special Education for the Educable Mentally Retarded in fourth and fifth grades. (R. at 125, 168.) In eighth grade, Plaintiff earned C's in general education classes in English, Math and Science. (R. at 164.) In ninth grade, Plaintiff participated in the STEP program and earned D's in all of his classes. (R. at 164.) Plaintiff marked that he could read English and could write more than his name. (R. at 118.)

Plaintiff last worked at Wendy's fast food restaurant, but stopped working in 1997 after suffering a fall. (R. at 129.) From 1991 until 1993, Plaintiff worked as a pipe layer. (R. at 130.) This work involved using machines, tools and equipment, using technical knowledge and skills, and writing and completing reports. (R. at 141.) In the 1980's, Plaintiff worked as a tow truck driver. (R. at 138.) The job required the use of machines, tools, equipment, technical knowledge and skills, and writing and completing reports. (R. at 142.) Plaintiff had a commercial driver's license. (R. at 353.)

B. Non-treating State Agency Physician's Opinion

On February 18, 2008, Therese M. May, Ph.D. evaluated Plaintiff's mental status and conducted IQ testing. (R. at 352.) Dr. May reported that Plaintiff held twelve jobs in the past. (R. at 353.) Plaintiff held a commercial driver's license and drove a tow truck for ten years. (R. at 353.) During the examination, Plaintiff's thought process appeared slow and impoverished, but concrete. (R. at 354.) Plaintiff's short-term and long-term memory remained intact, but his fund of information fell well "below average." (R. at 354.) He demonstrated impaired abstract thinking. (R. at 354.) Plaintiff had the ability to manage his funds. (R. at 358.)

Dr. May opined that Plaintiff had borderline intellectual functioning. (R. at 357.) Plaintiff's overall verbal IQ registered at 69, his performance IQ registered at 77 and his full scale IQ was 70. (R. at 356.)

C. Plaintiff's Testimony

On November 30, 2007, Plaintiff testified before an ALJ. (R. at 367-68.) Plaintiff indicated that he could read and write "a little bit," but he could not read a newspaper. (R. at 376.) He could perform simple addition and subtraction. (R. at 376.) During the relevant period, Plaintiff held a driver's license, but did not drive every day, because he stayed at home to care for his son. (R. at 377-78.) Plaintiff served as the primary caretaker for his youngest son while he was a baby, because Plaintiff's wife worked. (R. at 379.) Plaintiff cared for his son by feeding him, cooking for him, changing him and playing with him. (R. at 379.) Plaintiff's mother helped care for his youngest son by visiting daily, because Plaintiff needed help physically caring for him. (R. at 387-88.) However, Plaintiff would care for him alone on some days. (R. at 388.) Plaintiff also cared for his two older sons after they returned home from elementary school. (R. at 381.)

During the relevant time period, Plaintiff worked at Wendy's fast food restaurant for about four or five hours a day, roughly five days a week. (R. at 380-81.) He worked those hours, so that he could tend to his children. (R. at 382.) His job included cleaning and emptying the trash. (R. at 386.) Before his youngest son was born in 1999, Plaintiff helped his wife shopping and performed some cooking. (R. at 393.) He spent time with his family, neighbors and friends. (R. at 393.) Plaintiff testified that before 1999, he never sought any psychiatric or mental health care. (R. at 398.)

D. Function Report

On January 28, 2005, Plaintiff completed a Function Report in which he indicated that he suffered problems stemming from hip, leg and back pain. (R. at 146-53.) Plaintiff could bathe, care for his hair, shave, feed himself and use the toilet. (R. at 147.) He needed no reminders to take care of his personal needs. (R. at 148.) While Plaintiff could not drive, he attributed this to his pain. (R. at 149.) He could count change and handle a savings account. (R. at 149.) However, he could not use a checkbook. (R. at 149.) Plaintiff talked on the phone daily and did not need reminders to go places. (R. at 150.)

Plaintiff experienced difficulty getting along with friends and family members when he was in pain. (R. at 151.) His condition had no effect on his ability to talk, hear, see, remember, understand, follow instructions, use his hands or get along with others. (R. at 151.) He indicated that he was able to follow spoken and written instructions if someone read to him. (R. at 151.) He had no difficulties getting along with authority figures and handling stress or changes in his routine. (R. at 152.)

E. Third-party Correspondence

On December 12, 2008, Plaintiff's sister, Patricia Saffelle, provided Plaintiff's attorney with a letter detailing Plaintiff's work history at Wendy's. (R. at 186.) During the time that Plaintiff worked at the restaurant, Ms. Saffelle served as the restaurant's general manager. (R. at 186.) Plaintiff worked part-time, typically in the mornings. (R. at 186.) He worked about three to four hours at a time about three to four days each week. (R. at 186.) His job duties included cleaning and emptying grease traps. (R. at 186.) Ms. Saffelle indicated that Plaintiff experienced pain and could not work after he suffered a fall. (R. at 186.) Further, she noted that Plaintiff could not do much for himself and that his mother cared for his child, cooked and

5

cleaned. (R. at 186.) However, Ms. Saffelle attributed this to Plaintiff's pain and Plaintiff's inability to bend. (R. at 186.)

On December 13, 2008, Plaintiff's mother, Anna Mae Miller, provided Plaintiff's attorney with a letter detailing Plaintiff's condition. (R. at 187.) Ms. Miller explained that she cared for Plaintiff's son, because Plaintiff's wife worked and Plaintiff could not take care of the child due to his hip problems. (R. at 187.)

F. Medical Expert Testimony

On August 20, 2012, Dr. Robert Mueller, a clinical psychologist, testified after reviewing Plaintiff's medical records. (R. at 428.) Dr. Mueller opined that Plaintiff had no psychiatric diagnosis that would meet a listing. (R. at 429.) Dr. Mueller offered that Plaintiff's condition most closely met listing § 12.05(C), but Plaintiff lacked a formal assessment of his IQ. (R. at 429.) Further, Dr. Mueller noted that, assuming that Plaintiff's IQ testing was valid, Plaintiff demonstrated borderline intellectual functioning, but not mild mental retardation. (R. at 430.)

Dr. Mueller opined that Plaintiff's substantial gainful activities from 1981 through 1987 would be "inconsistent with deficits in adaptive behavior before age 22." (R. at 430.) While the disability office indicated that Plaintiff was illiterate, Dr. Mueller explained that Plaintiff was not medically diagnosed as illiterate. (R. at 431.) Dr. Mueller further indicated that Plaintiff's special education classes did not demonstrate deficits in adaptive functioning. (R. at 432.) Dr. Mueller opined that Plaintiff had moderate interaction deficit based upon Dr. May's 2008 evaluation of Plaintiff. (R. at 433.)

G. Vocational Expert Testimony

On August 10, 2012, Robert Lester, a vocational expert ("VE"), testified during a hearing. (R. at 498, 532.) The ALJ asked the VE to assume a person of the same age, work

experience and education as Plaintiff, who could lift five pounds frequently, ten pounds occasionally, sit for six hours, stand and/or walk for two hours, and crawl, crouch, bend and stoop occasionally, but could never climb ladders, ropes and scaffoldings, and was limited to simple routine tasks with occasional interaction with the public, peers and supervisors. (R. at 533.) The VE testified that such a person could not perform Plaintiff's past relevant work, but jobs existed in the national economy that such a person could perform, including positions as a final assembler and a loader of semi-conductor dyes. (R. at 533-34.) Even if the hypothetical person could not perform assembly jobs, he could work as a document preparer or addresser. (R. at 537.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 3, 2004, claiming disability due to orthopedic impairments with an alleged onset date of May 7, 1996 through his date last insured of March 31, 1999. (R. at 449.)[3] The Social Security Administration ("SSA") denied Plaintiff's DIB Claim initially and on reconsideration. (R. at 78, 87.)

On November 30, 2007, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 367.) On April 16, 2009, the ALJ denied Plaintiff's DIB application, finding that he was not entitled to DIB from his alleged onset date to his date last insured. (R. at 28.) The Appeals Council denied Plaintiff's request for review. (R. at 3.)

After Plaintiff appealed to the District Court, the Commissioner consented to remand for further consideration and development of the record regarding Plaintiff's mental condition. (R. at 469-70.) Thereafter, the ALJ determined that Plaintiff had borderline intellectual functioning from Plaintiff's alleged onset date to Plaintiff's date last insured, but that he was not disabled

---

[3] Plaintiff receives Supplemental Security Income ("SSI") as of December 2004 due to his physical impairments. (R. at 410.)

under the Act. (R. at 446-60.) The Appeals Council subsequently denied Plaintiff's request for review on March 29, 2013, rendering the ALJ's decision the final decision of the Commissioner. (R. at 420.)

### III. QUESTION PRESENTED

Did the ALJ err in determining that Plaintiff's condition did not meet the requirements of listing § 12.05(C)?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court must determine whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if substantial evidence in the record

8

supports the findings, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if substantial evidence does not support the ALJ's determination or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. An ALJ conducts this analysis for the Commissioner, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether substantial evidence supports the resulting decision of the Commissioner. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[5] based on an assessment of the claimant's RFC[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE testifies, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A. The ALJ's Opinion

At the first step of the analysis, the ALJ indicated that Plaintiff last met the insured status requirement on March 31, 1999, and had not engaged in substantial gainful activity from his alleged onset date of May 7, 1996, until his date last insured. (R. at 449.) At the second step, the ALJ found Plaintiff to have severe impairments in the form of painful range of hip motion associated with total right hip replacement, chronic obstructive asthma and borderline intellectual functioning. (R. at 449.) Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. at 450.) Specifically, the ALJ considered Plaintiff's mental impairments under the requirements of listing § 12.05(C) for intellectual disability and determined that Plaintiff did not have significantly subaverage general

11

intellectual functioning with deficits in adaptive functioning initially manifesting before age 22. (R. at 451.) However, the ALJ found that Plaintiff's verbal IQ score registered at 69 with a full scale IQ score of 70, and that Plaintiff had severe physical impairments in the form of painful range of hip motion and chronic obstructive asthma. (R. at 451.)

The ALJ then determined that Plaintiff maintained the ability to perform sedentary work, limited to routine tasks with occasional interaction with the public, peers and supervisors. (R. at 452.) Plaintiff could never climb ladders, ropes and scaffolds, but could occasionally crawl, crouch, bend and stoop. (R. at 452.) At the fourth step, the ALJ determined that Plaintiff could not perform his past relevant work. (R. at 458.) Finally, the ALJ determined that Plaintiff had limited education, but that significant jobs exist in the national economy that Plaintiff could perform. (R. at 458-59.) Therefore, Plaintiff was not entitled to DIB under the Act. (R. at 460.)

Plaintiff argues that the ALJ erred in determining that Plaintiff's mental condition did not meet the requirements of listing § 12.05(C). (Pl.'s Mem. at 16-29.) Defendant contends that the ALJ used the correct legal standard in making his decision and that substantial evidence supports the ALJ's determination. (Def.'s Mot. for Summ. J. and Mem. in Support ("Def.'s Mem.) (ECF No. 11) at 10-16.)

   B. The ALJ did not err in determining that Plaintiff did not meet the requirements of listing § 12.05(C).

Plaintiff argues that the ALJ erred in finding that Plaintiff's condition did not meet listing § 12.05(C) for an intellectual disability. (Pl.'s Mem. at 16-29.) Specifically, Plaintiff contends that the ALJ applied the wrong legal standard in reaching his determination and that the ALJ's decision lacks the support of substantial evidence. (Pl.'s Mem at 16-29.) Defendant maintains that the ALJ did not err in determining that Plaintiff's condition did not meet the listing. (Def.'s Mem. at 10-17.)

Plaintiff has the burden of proving that he meets or equals a listing. *Yuckert*, 482 U.S. at 146 n.5. The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990).

1. Borderline Intellectual Functioning

Plaintiff argues that the ALJ relied upon mistaken evidence that Plaintiff had borderline intellectual functioning, rather than an intellectual disability, because Dr. Mueller based his diagnosis on the premises that a full scale IQ of 70 demonstrates borderline intellectual functioning. (Pl.'s Mem. at 22-26.)

The term intellectual disability replaced the term "mental retardation" that was used in previous versions of the listings. DSM-5 33 (American Psychiatric Association 2013). A diagnosis of borderline intellectual functioning is "mutually exclusive of mental retardation." *Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 768-69 (11th Cir. 2012). While a full scale IQ of 70 may allow for a diagnosis of mental retardation, such a diagnosis depends upon Plaintiff exhibiting significant deficits in adaptive behavior." DSM-IV-Tr 41-42 (American Psychiatric Association 2000).

Substantial evidence supports the ALJ's determination that Plaintiff experienced borderline intellectual functioning. First, the medical evidence indicates that Plaintiff had a diagnosis of borderline intellectual functioning. Indeed, Dr. May opined that Plaintiff had borderline intellectual functioning. (R. at 357.) Further, Dr. Mueller noted that Plaintiff demonstrated borderline intellectual functioning, but not mild mental retardation, based upon Dr. Mueller's review of Dr. May's evaluation and Plaintiff's full scale IQ of 70. (R. at 428-30.) Dr. Mueller also opined that Plaintiff had no deficits in adaptive functioning. (R. at 431-32.) And as

set forth below, substantial evidence supports that finding that Plaintiff had no deficits in adaptive functioning. Based upon the opinion and objective evidence in the record, the ALJ did not err in finding Plaintiff had borderline intellectual functioning.

2. Prongs of Listing 12.05(C)

Plaintiff contends that by relying on the term borderline intellectual functioning, the ALJ imposed a higher standard in determining Plaintiff's disability, because the ALJ failed to take into account Plaintiff's deficits in adaptive functioning. (Pl.'s Reply to Def.'s Mot. for Summ. J. and Br. in Supp., Thereof ("Pl.'s Reply") (ECF No. 13) at 5.) However, the ALJ did not solely rely upon the term borderline intellectual functioning for finding that Plaintiff failed to establish that he met the requirements of listing § 12.05(C) and, instead, took into account all of the criteria required by listing § 12.05(C). (R. at 451.)

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. The listing for an intellectual disability requires Plaintiff's condition to satisfy the "diagnostic description of the introductory paragraph and one of four sets of criteria" listing in paragraphs A through D to meet the listing requirements. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. Specifically, to meet listing § 12.05(C), Plaintiff must demonstrate:

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Thus, as the parties agree, to meet the listing, Plaintiff must demonstrate (1) an IQ score between 60 and 70, (2) a physical or other mental impairment imposing an additional and significant work-related function, and (3) significantly subaverage general intellectual functioning with deficits in functioning before age 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; (Pl.'s Mem. at 16-27; Def.'s Mem. at 11).

Here, the ALJ determined that Plaintiff's condition did not meet the requirements of listing § 12.05(C) for an intellectual disability. (R. at 451.) Specifically, the ALJ found that Plaintiff's verbal IQ score registered at 69 and his full scale IQ score registered at 70, and that Plaintiff had severe physical impairments in the form of painful range of hip motion and chronic obstructive asthma to meet two prongs of the listing. (R. at 451.) However, Plaintiff did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting before age 22. (R. at 451.) In doing so, the ALJ took into consideration Plaintiff's special education classes and previous work. (R. at 451.) Substantial evidence supports the ALJ's determination as to whether Plaintiff met the requirements of the prongs of the listing.

> a. A physical or other mental impairment imposing an additional and significant work-related limitation of function.

The ALJ found that Plaintiff had severe physical impairments in the form of painful range of hip motion and chronic obstructive asthma to satisfy this prong of listing § 12.05(C). (R. at 451.) While Plaintiff argues that evidence demonstrates that Plaintiff had a physical impairment that created a work-related limitation, Defendant does not contest this determination.

15

(Pl.'s Mem. at 26-27.) Indeed, substantial evidence supports the ALJ's determination that Plaintiff had a physical impairment imposing an additional and significant work-related limitation.[7] Plaintiff had severe impairments in the form of painful range of hip motion associated with total right hip replacement and chronic obstructive asthma. (R. at 449.) Due to these impairments, Plaintiff could perform sedentary work, but could never climb ladders, ropes and scaffolds, and could occasionally crawl, crouch, bend and stoop. (R. at 452.) Because of his physical condition, Plaintiff could not perform his past relevant work. (R. at 458.) Therefore, the ALJ correctly found that Plaintiff's condition satisfied this prong of listing § 12.05(C).

b. IQ Score of 60 through 70

The ALJ found that Plaintiff's verbal IQ score registered at 69 and his full scale IQ score registered at 70; therefore, Plaintiff met this prong of the listing. (R. at 451.) The parties agree that the validity of Plaintiff's IQ scores is not at issue and that Plaintiff's scores satisfied the IQ prong of listing § 12.05(C). (Pl.'s Mem. at 22-26; Def.'s Mem. at 13; Pl.'s Reply at 3.)

c. Deficits in Adaptive Functioning

The next prong of the listing requires that Plaintiff demonstrate significantly subaverage general intellectual functioning with deficits in functioning before age 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Such deficits "limit functioning in one or more activities of daily living, such as communication, social participation and independent living." DSM-5 33 (American Psychiatric Association 2013). "Deficits in adaptive functioning can include

---

7  Though Plaintiff admits that substantial evidence supports the ALJ's determination that Plaintiff's physical impartments did not meet the requirements for DIB to be found disabled under the Act, the parties do not contest that Plaintiff experienced a physical impairment that created a work-related limitation required to meet this prong of the listing. (Pl.'s Mem. at 8 n.2, 26.)

16

limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002).

Plaintiff argues that the ALJ applied the incorrect standard of law by requiring Plaintiff to demonstrate a complete absence of adaptive functioning to meet the listing, rather than just some deficiencies in functioning. (Pl.'s Mem. at 19.) In support of this argument, Plaintiff contends that by finding Plaintiff's work as a tow truck driver during the 1980's as demonstrating adaptive functioning, the ALJ placed a higher standard upon Plaintiff that should not have been levied. (Pl.'s Mem. at 19-21.) Further, Plaintiff argues that his enrollment in special education classes, IQ scores and illiteracy demonstrate deficits in adaptive function to satisfy that prong of listing § 12.05(C). (Pl.'s Mem. at 18-19, 18 n.5.)

Although Plaintiff recites the correct standard and that the listing only requires Plaintiff to demonstrate deficits in adaptive functioning and not a complete absence of adaptive functioning, the Court finds that the ALJ did indeed apply that standard by finding that Plaintiff "did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, prior to age 22." (R. at 451.) In making this determination, the ALJ noted that Plaintiff attended special education classes, that Plaintiff's overall verbal IQ registered at 69 and his full-scale IQ was 70, and that Plaintiff performed semi-skilled work as a tow truck driver. (R. at 451.)

The ALJ correctly considered Plaintiff's past work in finding that Plaintiff experienced no deficits in adaptive functioning. Plaintiff worked as a tow truck driver, which constituted semi-skilled work. (R. at 130, 142, 353, 451.) The Fourth Circuit has found that past semi-skilled work and other tasks performed by a claimant can provide substantial evidence for

finding that the claimant had no deficits in adaptive functioning. *Hancock*, 667 F.3d at 475-76. Thus, the ALJ correctly considered the evidence and substantial evidence supports the ALJ's determination.

Further, Plaintiff's IQ scores, education and any mention of illiteracy does not constitute deficits in adaptive functioning. While Plaintiff argues that he attended special education classes, enrollment in special education classes and the failure to complete high school does not establish deficits in adaptive functioning. *Faulcon v. Comm'r of Soc. Sec. Admin*, 2013 WL 1163500, at * 2 (D. Md. Mar. 18, 2013); *Milstead v. Astrue*, 2012 WL 5285667, at *3 (W.D.Va. Oct. 23, 2012). Moreover, the ALJ considered Plaintiff's educational records and special education classes. (R. at 451.) Plaintiff earned passing grades in general education classes in ninth grade and participated in the STEP program with passing grades. (R. at 164.) Plaintiff marked that he could read and write more than his name. (R. at 118.) Dr. Mueller indicated that Plaintiff's special education classes did not demonstrate deficits in adaptive functioning. (R. at 432.) Therefore, the ALJ did not err in considering Plaintiff's education and determining that Plaintiff experienced no deficits in adaptive functioning.

Plaintiff also argues that Plaintiff's illiteracy demonstrated a deficit in adaptive functioning. (Pl.'s Mem. at 21 n.7.) Plaintiff cites to *Luckey v. U.S. Dept. of Health and Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989), for the proposition that Plaintiff's illiteracy is evidence of a deficit in adaptive functioning. Although, the Fourth Circuit found that "the evidence that [claimant] could barely read or write was a clear manifestation of mental retardation occurring before age twenty-two," *id.*, such evidence does not exist here. Plaintiff marked that he could read English and could write more than his name. (R. at 118.) His work as a tow truck driver and pipe layer required writing and completing reports. (R. at 141-42.)

Plaintiff himself testified that he could read and write "a little bit." (R. at 376.) Finally, Dr. Mueller explained that Plaintiff was not medically diagnosed as illiterate. (R. at 431.)

Plaintiff further contends that Plaintiff's IQ scores from his 2008 examination demonstrate deficits in adaptive functioning before age 22, because Plaintiff's impairment is a lifelong condition. (Pl.'s Reply at 2.) Plaintiff's IQ score from a recent examination would presumptively reflect Plaintiff's IQ before age 22, because IQ remains relatively the same throughout one's lifetime. *Luckey*, 890 F.2d at 668; *Justice v. Barnhart*, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006). However, IQ score alone does not demonstrate deficits in adaptive functioning. *Justice*, 431 F. Supp. 2d at 620 (citing 67 Fed. Reg. at 20,022.) Instead, Defendant may rebut the presumption of the mental impairment through evidence of Plaintiff's daily activities. *Id.* (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001)).

Here, the ALJ cited Plaintiff's work as a tow truck driver before the age of 22. (R. at 451.) Plaintiff's work as a tow truck driver required use of machines, tools, equipment, technical knowledge and skills along with writing and completing reports. (R. at 142.) Further, Plaintiff held a commercial driver's license. (R. at 353.) Dr. Mueller opined that Plaintiff's substantial gainful activities from 1981 through 1987 would be "inconsistent with deficits in adaptive behavior before age 22." (R. at 430.) Therefore, Plaintiff's IQ score from 1998 did not demonstrate that Plaintiff suffered deficits in adaptive functioning before age 22.

It bears repeating that Plaintiff bears the burden of proving that he meets or equals a listing. *Yuckert*, 482 U.S. at 146 n.5. And the only existing evidence regarding Plaintiff's ability before age 22 consists of Plaintiff's educational records and his work experience as a tow truck driver. No further evidence in the record exists to demonstrate that Plaintiff experienced deficits of adaptive functioning before age 22. Plaintiff himself testified that before 1999 he never

underwent any psychiatric or mental health treatment. (R. at 398.) And Dr. May indicated that no evidence of a psychiatric diagnosis of substance abuse or personality factors existed. (R. at 357.)

Because the evidence relied upon by Plaintiff and considered by the ALJ does not demonstrate deficits in adaptive functioning and no further evidence exists in the record to show that any deficits existed before age 22, the ALJ did not err in finding that Plaintiff did not have deficits in adaptive functioning as required to meet listing § 12.05(C). Therefore, the ALJ did not err in determining that Plaintiff's condition did not meet listing § 12.05(C).

## VI. CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 8); GRANTS Defendant's Motion for Summary Judgment (ECF No. 11); and AFFIRMS the final decision of the Commissioner.

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

An appropriate Order shall issue.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: March 4, 2014